UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
JILLIAN JONES,

                Plaintiff,

  -against-                    **MEMORANDUM AND ORDER**
                                    Case No. 16-CV-6540 (FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
---------------------------------------------------x

**BLOCK, Senior District Judge:**

      Jillian Jones seeks review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits. Both parties move for judgment on the pleadings. The Commissioner found that Jones did not have severe back or wrist injuries and that she did not need a cane. The Commissioner's finding with respect to Jones's back injury and need for a cane was not supported by substantial evidence because the Commissioner failed to adequately explain why she discounted some physicians' opinions, relied on negative evidence, misapplied the treating physician rule, and failed to fully develop the record. The finding respecting the severe wrist injury, however, was supported by substantial evidence. Therefore, Jones's motion is granted in part and denied in part and the Commissioner's motion is granted in part and denied in part. The case is remanded for further proceedings consistent with this Memorandum and Order.

1

# I.

Jones was born in 1962, has a high school education, and graduated from a nursing school. She worked as a Certified Nurse Assistant from June 1989 until December 2011, when she injured herself while trying to help a patient. She applied for benefits in December 2013, alleging an onset date of December 1, 2011. After her application was denied, she sought and participated in a hearing before Administrative Law Judge ("ALJ") Michael Friedman, where she was represented by counsel. The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied Jones's request for review. The evidence developed by the ALJ was as follows.

## A. Treatments for Back Injury

Jones first injured herself a year and a half prior to her alleged onset date, when she "slid and jerked her back" while helping a patient with a shower. Administrative Record ("AR") at 218. She presented to Dr. Jean Compas, a family practitioner, and complained of "unbearable" pain in her back as well as pain and swelling around her left knee. *Id.* When she injured herself again at work on December 1, 2011, she finally stopped working. She continued seeing Dr. Compas for her back pain and was diagnosed with lumbosacral radiculitis in August 2012. A November 2012 MRI showed various lower back injuries, including disc desiccation, diffuse bulging of disks, and protruded disc herniation.

Jones also saw Dr. Dwiref Mehta, an orthopedic surgeon, shortly after her December 2011 injury and through April 2013. He diagnosed her with lumbar myofasciitis and, throughout his treatment, performed various tests on her knee (discussed *infra*) as well as straight leg raise tests for her back, all of which yielded positive results. In February, he completed a medical source statement in which he opined that Jones could lift, carry, push, and pull up to 20 pounds, attaching MRIs and range of motion charts to the statement.

In late 2012, Jones also saw doctors at Family Chiropractic, P.C. ("Family Chiropractic"), whose examinations revealed a variety of lower back injuries, as well.

In May 2013, Dr. Compas opined that Jones was incapable of sitting for more than 30 minutes at a time or for more than one hour in an eight-hour workday, had to change positions for 15 minutes every 30 minutes, and was incapable of occasionally lifting more than 5–10 pounds or carrying more than two pounds. These findings were based both on Jones back injury and her knee injury.

**B.     Treatments for Knee Injury**

Jones's accidents also resulted in significant injuries to her left knee. Both Dr. Mehta and Dr. Compas, as well as Family Chiropractic, treated her for her knee injuries, but the doctor that most extensively cared for Jones's knee was Dr. Joseph Feliccia, another orthopedic surgeon. At their first appointment in July 2012, Dr.

Feliccia diagnosed Jones with advanced patellofemoral arthritis, injected her for pain, and prescribed a knee brace and pain medication, with a recommendation for continued physical therapy. Dr. Feliccia kept seeing Jones throughout 2012 and 2013, eventually recommending surgery, which he finally performed in June 2014. Jones continued seeing him throughout 2014 and through mid-2015 for postoperative care. On several occasions, he noted that Jones was able to perform a full straight leg raise test with full extension.[1] At their last examination in April 2015, Dr. Feliccia characterized Jones's condition as a "permanent partial functional disability in her ability to traverse stairs and walk for long periods of time." AR at 385.

C. **Treatment for Wrist Injury**

Jones injured her wrist in early 2013 when she fell due to her knee buckling in pain. She discussed it with Dr. Feliccia at their March 2013 appointment. X-rays revealed no fracture, and Dr. Feliccia advised Jones that she sprained her wrist, and gave her some pain medication.

D. **Consultative Examination**

In February 2014, Jones underwent a consultative examination with Dr. Ted Woods, a preventative medicine specialist engaged by the Commission. He

---

[1] In some of his pre-operation reports, Dr. Feliccia would occasionally mention negative straight leg raise tests as well.

4

described her "chief complaint" as pain in her left knee and also mentioned pain in her left wrist. In his report, Dr. Woods did not mention a back injury at all, although the notes from musculoskeletal examination note a full range of motion in the lumbar spine, with a notation that Jones was "slow to execute." AR at 324.

**E.    Jones's Testimony**

Jones testified at a hearing before the ALJ on June 25, 2015. She lives with her husband, her adult daughter, and her grandson. Her husband and daughter work and do the household chores. When she accompanies her husband to buy groceries, it is only to direct him what to buy, as she herself can only lift a bag of chips or a loaf of bread. She testified that she has difficulty sitting for long periods of time and mostly lies down. Her husband and daughter prepare food for her to eat for when she is left alone.

She described to feeling significant pain in her back, knee, and wrist. She said she was prescribed Oxycodone but is concerned about developing an addiction and so mostly takes Motrin for the pain.

Jones arrived to the hearing with a cane. She explained that she was "given" the cane by Drs. Compas and Feliccia after her surgery and that she uses it substantially all the time, although sometimes not inside the house. She testified that she can only walk a few blocks at a time (with the cane) before she starts feeling that her knees are about to buckle.

5

## F. Vocational Expert Testimony

A vocational expert ("VE") testified at the hearing as well. The VE did not identify any particular jobs, but only confirmed to the ALJ that the work of a Certified Nursing Assistant is classified at the medium exertional level..

## G. ALJ's Decision

The ALJ rendered his decision on July 24, 2015. Applying the familiar five-step sequential evaluation process,[2] he concluded at step one that Jones has not engaged in substantial gainful activity since the alleged onset date and has met the Social Security Act's insured status requirements through December 31, 2016. At step two, the ALJ found that Jones has one severe impairment, which is the derangement and degenerative joint disease of the left knee. He excluded Jones's alleged wrist or back injuries. At step three, the ALJ found that this impairment did not meet the criteria for any presumptively disabling impairment in the Listing of Impairments. At this step, the ALJ also found Jones's claim to need a cane non-

---

[2] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

credible and noted that no treating sources indicated that a cane was medically necessary.

The ALJ determined that Jones had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).[3] Accordingly, at step four, he found that she could not perform her past work as a Certified Nursing Assistant (which, as confirmed by the VE, is classified as medium exertion work). At step five, taking into account the RFC and Jones's age, education, and work experience, he found that she is not disabled and that there are jobs that exist in significant numbers in the national economy that she can perform.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial

---

[3] 20 C.F.R. § 404.1567(b) defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7

evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The Court will only set the Commissioner's determination aside if it was "based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971): it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Perales*, 402 U.S. at 401). "The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Jones challenges the Commissioner's determination that she has the RFC to perform the full range of light work. She primarily bases her argument on the ALJ's finding that her back and wrist injuries were not severe. She also contends that even if those injuries were not severe, the ALJ did not properly account for their cumulative contribution to her disability.[4] Finally, she argues that the ALJ improperly concluded that her use of a cane was not medically necessary.

---

[4] *See* SSR 96-8p, 1996 WL 37184 ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due

8

A. **Was the Commissioner's Decision with Respect to Jones's Back Injury Supported by Substantial Evidence?**

　　1. <u>The ALJ Did Not Satisfactorily Explain Why He Accorded More Weight to Dr. Feliccia than to Dr. Mehta and Family Chiropractic.</u>

The ALJ accorded "significant weight" to Dr. Feliccia's opinion, which made no reference to Jones's back injury; the ALJ also noted that the consultative examiner, Dr. Woods, was silent on it too. While he partially credited Dr. Mehta's opinion, it was only insofar as it was consistent with Dr. Feliccia's opinion about the knee injury. He did not mention Family Chiropractor at all.

The ALJ did not provide reasons for ignoring these doctors' opinions. Jones notes that though Dr. Feliccia is an orthopedic surgeon, she only saw him for her knee injury, not her back injury. Meanwhile, Dr. Mehta assessed Jones's back and found her disabled. The ALJ made no mention of these findings and did not explain why he accorded them no weight, even though they were based on objective medical evidence, such as straight leg raise tests. And, again, the ALJ did not mention Family Chiropractic at all, which also performed straight leg raise tests.[5]

---

to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.").

　　[5] As mentioned previously, Dr. Feliccia also performed straight leg raise tests, and unlike Dr. Mehta and Family Chiropractic, found negative results. The ALJ did not refer to Dr. Feliccia's straight leg raise tests, however. If he did take them into account in deciding to weigh Dr. Feliccia's opinions as to Jones's back injury more strongly than Dr. Mehta's and Family Chiropractic's opinions, he affords this Court no opportunity to review the propriety of that decision.

The Commissioner urges the Court to "glean the rationale of [the] ALJ's decision," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983),[6] but the Court cannot do that when a doctor's assessment has been entirely ignored, as Dr. Mehta's and Family Chiropractic's were. *See Murphy v. Sec'y of Health & Human Servs.*, 872 F. Supp. 1153, 1158 (E.D.N.Y. 1994).

Because the ALJ did not adequately explain why he discounted these opinions, the Court cannot find that he did so based on substantial evidence.

### 2. The ALJ Impermissibly Relied on Negative Evidence to Discount Dr. Compas's Opinion.

The ALJ also discounted Dr. Compas's opinion in large part because the doctor opined that Jones had a severe back injury even though Dr. Feliccia never mentioned it. The ALJ's reasoning appears to have been that since Dr. Feliccia never mentioned the injury and was deemed highly credible, Dr. Compas must be deemed non-credible. To the extent that the logic is not circular, it is legally dubious. *See, e.g.*, *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (silence from one

---

[6] In the brief in support of her motion and responding to Jones's motion, the Commissioner actually cited to *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) for this language. Although that language does not appear in *Brault*, the court there affirmed an opinion in which the ALJ implicitly rejected a "*Daubert*-like objection" to testimony from a VE. The court explained that it was permissible for the ALJ not to directly respond to this argument because, by adopting the VE's opinion, the ruling made it clear to a reviewing court that the ALJ found the VE's testimony reliable. That context is a far cry from the instant case, where the doctor ignored opinions based on objective evidence from a specialist for the very condition the claimant was experiencing.

doctor as to orthopedic impairments is not inconsistent with another doctor's diagnosis of impairments); *Hawley v. Colvin*, 13-CV-397, 2014 WL 3107967, at *3 (N.D.N.Y. July 8, 2014) ("Absent some evidence to the contrary, the only proper inference to be made from such silence is that [the doctor] simply did not consider that issue."); *Correale-Englehart v. Astrue*, 687 F. Supp. 2d, 396, 436 (S.D.N.Y. 2010) ("[T]he ALJ cannot rely on evidentiary gaps when determining whether a plaintiff has a RFC to perform certain work; he must instead support his determination with positive evidence."); *Ray v. Astrue*, 649 F. Supp. 2d 391, 405 (E.D. Pa. 2009) ("The mere absence of an assessment of limitations in the treatment notes does not render these notes inconsistent with [another doctor's] report.").

In response, the Commissioner argues that Dr. Feliccia *was* treating Jones for her back injury, relying on an entry in a Disability Report completed by Jones in which she said, "This is my treating orthopedist who [sic] I see for my knee and back pain." AR at 155. This argument is not persuasive. Regardless of how Jones characterized her treatment with Dr. Feliccia, the doctor's reports make clear that the focus of his treatment was almost entirely on Jones's knee.

In short, the Commissioner improperly relied on Dr. Feliccia's silence in giving Dr. Compas's opinion less weight.[7]

---

[7] The ALJ also noted that Dr. Compas suggested that Jones may have suffered a fracture in her wrist, even though x-rays ordered by Dr. Felicia did not show a fracture. Also, some of Dr. Compas's notations were internally inconsistent: he

### 3. The ALJ Failed to Apply the Treating Physician Rule.

The ALJ also all but ignored Dr. Compas's and Dr. Mehta's assessments of Jones's back injury—and entirely failed to even mention her treatment at Family Chiropractic—while giving significant weight to the opinion of Dr. Woods, the non-treating consultative examiner. Under the well-known "treating physician rule," codified at 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion must be given "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If an ALJ does not believe that a treating physician's opinions are sufficiently supported by facts, it is the ALJ's affirmative duty to further inquire from the physician. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.").

Additionally, when a treating physician's weight is not accorded controlling weight, § 404.1527(c) lists several factors that the ALJ must consider. Thus, the ALJ is required to specify not only how much weight he accorded a treating physician's opinion, but how that decision was reached. *See Halloran v. Barnhart*,

---

noted that Jones can sit "30 minutes at a time" and stand and walk "15 minutes at a time," but also indicated she can do these activities "1–2 hours continuously." These inconsistencies are not sufficient to vitiate Dr. Compas's entire opinion.

362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinions."). Although the ALJ did (arguably) discuss some of these factors as to Dr. Compas, he did not do so as to Dr. Mehta or Family Chiropractic.

Thus, the Court finds that the Commissioner's decision was not supported by substantial evidence.

**B.  Was the Commissioner's Decision with Respect to Jones's Wrist Injury Supported by Substantial Evidence?**

In considering a claimant's symptoms, including symptoms about pain, ALJs follow a two-step process. First, the ALJ looks for a medically determinable underlying impairment. Second, if one is found, the ALJ determines whether such an impairment could reasonably be expected to produce the symptom. *See* SSR 96-7p, 1996 WL 374186; 20 C.F.R. § 404.1529.

No objective evidence was put in the record that would indicate severe, ongoing wrist pain. Other than Jones's testimony and complaints to the doctors that examined her, no objective evidence, including x-rays or MRIs, indicated an underlying impairment consistent with such symptoms. Thus, the ALJ was

13

essentially asked to perform a credibility determination as to Jones's testimony. That determination was supported by substantial evidence.

## C. Was the Commissioner's Decision with Respect to Jones's Need for a Cane Supported by Substantial Evidence?

The ALJ failed to develop the record with respect to Jones's need for a cane. The record seemingly only contains two references to a cane. First, in a letter describing a May 2013 evaluation, Dr. Feliccia noted in passing that Jones was using a cane. AR at 295 ("She claims frequent sensations of her knee buckling and cannot walk more than a few blocks with the external support of a cane."). Second, at the hearing, Jones testified that Drs. Compas and Feliccia "gave [her] a cane" after her surgery. AR at 40. No prescription or notations from either doctor to that effect appear in the record.

This paucity of evidence is precisely the kind of problem the regulations are designed to address when they affirmatively require the Commissioner to consult with claimants' doctors to develop the record. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (discussing the ALJ's duty to solicit additional information from doctors). No prescription is required to purchase a cane. It is entirely possible that the use of a cane was a medical necessity for Jones, but that the doctors told her so orally and

she obtained one without a prescription. On the other hand, it is entirely possible that Jones does not need a cane, or at least has not needed one for some time. If the ALJ doubted Jones's credibility due to the absence of medical evidence, he should have consulted with her physicians. The ALJ was in no position to decide one way or the other because, as noted, ALJs cannot rely on negative evidence to form a lay opinion. Consequently, this Court cannot evaluate the record.

The matter of the cane was important. The ALJ found Jones's RFC to be consistent with an ability to exert a full range of light work. As noted *supra*, light work requires individuals to "have the ability to do substantially all" of a range of activities, including lifting and carrying objects. 20 C.F.R. § 404.1567(b). A persistent need for a cane is not consistent with a full range of performance at a light exertional level. *Accord Feringa v. Comm'r of Soc. Sec.*, 15-CV-785, 2016 WL 5417403, at *7 (E.D.N.Y. Sept. 9, 2015) (remanding when ALJ did not take account of need for cane use in finding a RFC for light work). Thus, the ALJ must further develop the record to determine whether Jones needs a cane for ambulation—and if so, how far she can actually walk with one.

## III.

For the foregoing reasons, Jones's motion for judgment on the pleadings is granted in part and denied in part, the Commissioner's motion for judgment on the

pleadings is granted in part and denied in part, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 30, 2018